# NUMO VANEFF v. GREAT NORTHERN RAILWAY COMPANY.[1]

December 13, 1912.

Nos. 17,856—(93).

**Negligence of fellow servant — evidence — verdict.**
> Evidence in an action based upon the claim that a fellow servant of the plaintiff negligently pushed him off a crowded handcar, thus causing the injuries complained of, considered and *held* sufficient to sustain a verdict for the plaintiff after its approval by the trial court.

Action in the district court for Otter Tail county to recover $15,500 for personal injuries. The case was tried before Taylor, J., and a jury which returned a verdict in favor of plaintiff for $900. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*J. D. Sullivan* and *M. L. Countryman,* for appellant.
*Thomas D. Schall* and *M. J. Daly,* for respondent.

PHILIP E. BROWN, J.

Action to recover damages claimed to have resulted from the defendant's negligence and also that of a fellow servant of the plaintiff. The plaintiff had a verdict for $900, and the defendant appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial.

The complaint alleged that the plaintiff was employed as a section hand by the defendant, and that while riding on one of its handcars in the performance of his duties, near Crookston, the car was run at excessive and dangerous speed, and was so overcrowded and overloaded that a fellow workman thereon, in endeavoring to change his position, negligently jostled the plaintiff, thereby causing him to fall from the car and be injured. The defendant admitted its employment

1 Reported in 138 N. W. 1027.

of the plaintiff as a section man, denied all other claims made by him, and alleged, in defense, his contributory negligence and assumption of risk.

The plaintiff was a Macedonian, and had lived in this country for about four years prior to the accident. His knowledge of our language was confined to his ability to speak a few words, his testimony being given through an interpreter. It appeared from the uncontradicted testimony that he worked for the defendant as a section hand from June 18, 1911, until July 8 following, and that on the latter date, in the evening, he rode towards Crookston on a handcar, the same being one of those in common use by the defendant and being four feet four inches wide and six feet long, with the customary propulsion frames and handles in the center. A number of shovels and other articles were on the car. After traveling several miles, and when the car had arrived at or near the point where the plaintiff and some of his fellow workmen sometimes left it, the plaintiff, who had been standing on the front end of the car assisting in pumping with his right hand, either fell or jumped off between the rails in front of the moving car, and was injured. The plaintiff claimed that there were fourteen men on the car, besides the foreman, during the journey on which the accident occurred, six section men, of whom he was one, being on the front end of the car, six on the rear, and two, together with the foreman, in the center. The defendant claimed in this regard that there were only twelve men on the car, including the foreman, four being at each end and four in the center. The plaintiff claimed that the six men on the front end of the car stood sidewise, he being on the outside corner, with their backs close to each other's breasts, crosswise of the car, and that the man standing in front of him, whose name was Tham Meik, but whom we will designate as Tham, without indicating his intention so to do, released his hold on the handle bar and turned completely around, thus causing the plaintiff to fall from the car. The defendant, while admitting that the men stood sidewise on the front end of the car as claimed by the plaintiff, denied that he stood on the outside corner or that he was pushed or jostled from the car, or that he fell therefrom, and claimed that he, while pumping with his right hand,

turned around, jumped backwards from the car with both feet at the same time, and fell upon his back between the rails.

The questions of the alleged excessive speed of the car and the overcrowding of the same, were not submitted to the jury, and the court gave the following instructions among others as a part of the general charge:

"If he (plaintiff) slipped and fell because his fellow workman next in front of him negligently pushed him, and he is not chargeable with contributory negligence himself, he is entitled to damages for whatever injuries he may have sustained."

"If the man next in front of the plaintiff failed to exercise such ordinary care, but carelessly turned and pushed plaintiff so that he fell, you can find that he was negligent, and, if his negligence caused the accident, and there was no contributory negligence on the part of plaintiff himself, the defendant is responsible in damages."

"If you find that this man did negligently push him and cause him to fall and do not find that the plaintiff himself is chargeable with contributory negligence, he is entitled to a verdict."

The plaintiff does not claim that these instructions are improper in form, but makes the point that their impropriety consists in the absence of evidence to sustain them, and moreover that, if there was any such evidence, yet it was manifestly and palpably insufficient to sustain the verdict rendered. These claims, and likewise the defendant's other assignments of error, raise the sole question: Was the evidence insufficient to warrant a finding that a fellow workman carelessly, unexpectedly, and without warning, turned and changed his position on the car, thus jostling the plaintiff so that he fell therefrom?

The general principles applicable to the instant case are settled by the cases of Hider v. Minneapolis, St. P. & Sault Ste. Marie Ry. Co. 115 Minn. 325, 132 N. W. 316, and Steffenson v. Chicago, M. & St. P. Ry. Co. 51 Minn. 531, 53 N. W. 800. Furthermore, by analogy, these cases practically determine the instant case adversely to the contentions of the defendant. The facts of these two cases

parallel those of the instant case to a remarkable degree, each of the three cases being an action by a section hand to recover for injuries sustained from a fall from a slowly moving, crowded handcar. In each case the car was being slowed down, with a view of letting some or all of the men off. In each the plaintiff fell on his back, between the rails, in front of the car, with his feet towards the car. The facts of the two cases to which we refer are summarized and compared by Mr. Justice Brown at page 327 of the opinion in the Hider case, as follows:

"We are unable to distinguish the case from Steffenson v. Chicago, M. & St. P. Ry. Co. 51 Minn. 531, 53 N. W. 800. That case was before the court on three separate appeals. On the first it was held that the railroad fellow servant statute (Laws 1887, p. 69, c. 13) applied to section men while employed in operating a handcar furnished them by the company for use in their work. 45 Minn. 355, 47 N. W. 1068, 11 L.R.A. 271. The negligence charged in that case was substantially that in the case at bar, namely, overloading the car, and negligence of a fellow servant. On the second appeal it was held that the evidence failed to show negligence in overloading the car, and the cause was remanded for a new trial upon the question of the negligence of a fellow servant. 48 Minn. 285, 51 N. W. 610. On the third trial the jury found negligence in the conduct of the fellow servant, and the verdict was sustained. 51 Minn. 531, 53 N. W. 800. The act there charged as negligence was the sudden and unexpected turning around by one of the men on the car for the purpose of setting the brake and bringing the car to a stop, which resulted in pushing plaintiff from the car. In the case at bar the negligent act was that of two of the men suddenly and without warning jumping from the car while in motion, thus unexpectedly releasing plaintiff's support and causing him to fall from the car. There is no substantial difference between the two cases, and we follow the former decision."

And so, in the instant case, we think the two former decisions above cited should be followed. The Steffenson case is peculiarly in point, for besides the identity of facts above noted, which we have

gathered from the opinion in 51 Minn. 531 and also from the record and briefs in the case, it appears that the defendant's contention there was the same as in the instant case, namely, that the plaintiff jumped off the car. See page 19 of appellant's brief in the Steffenson case (Cases and Briefs Supreme Court, October Term 1892, Case No. 115). In that case, furthermore, it appeared from the record that warning was given that the car was about to stop, and that the brake was about to be applied by the member of the plaintiff's crew who usually applied it and who, as claimed by the plaintiff, pushed plaintiff from the car in so doing, it being also held that the setting of the brake was necessary, whereas in the instant case it appears from the testimony of the defendant's own witnesses that nothing was said by the men on the car just prior to the accident, and no claim is made that the act of the workman in changing his position was necessary. It is true that, in the instant case, there was direct testimony tending to support the defendant's theory that the plaintiff jumped off the car, but at most this merely created a conflict, to which we will refer later, for the plaintiff testified positively in support of his theory that he was pushed off the car by Tham. As said in the Steffenson case, at page 533: "As to the fact of negligence, the case presented by the plaintiff was not a strong one, but the issue was so doubtful upon the evidence that we think that the verdict must be accepted as final."

In view, however, of the conflict in the evidence in the present case, which must be admitted to be of a more direct nature than in the two cases above cited, though we do not think it is more real, we will discuss the evidence herein in more detail than was done in those cases. To sustain its contention, the defendant quotes in its brief certain testimony given by the plaintiff, and if this were all of the testimony in the record to sustain the plaintiff's contention that he was jostled so that he fell from the car, or was a fair summary of the evidence in this regard, it would be very doubtful whether the court was warranted in submitting the case to the jury. It appears that the plaintiff was examined at considerable length through an interpreter who was not proficient in our language, and his testimony, when taken apart, shows all the customary inconsistencies which ac-

company testimony so taken. The defendant insists, furthermore, that the plaintiff's statement that a fellow workman shoved him off the car, was the result of a leading question. But in other portions of the record the plaintiff makes the same statement, both on direct and indirect examination, and it is entirely clear from his whole testimony that such was his claim, and it cannot fairly be said that it was prompted by his counsel. Neither do we think that such claim is improbable (see Steffenson v. Chicago, M. & St. P. Ry. Co. supra), and while no witness testified in support of the plaintiff's account of the accident in his behalf, it appearing that several of his fellow workmen who saw the accident had left the locality, yet his claim was materially supported by the inconsistencies in the accounts given by the defendant's witnesses. Thus, the foreman was at first very confident as to the number of men on the car at the time, and the number at work in his gang during all the time plaintiff was a member thereof, which testimony he gave by reference to his book; but, though this book is not in the record, it appears from his cross-examination that there were times, during the period in question, when there were fifteen men at work in this gang. Again, one Wekne, the other witness besides Tham and the foreman, who testified as to the details of the accident in behalf of the defendant, persisted that he did not see the car strike the plaintiff, and Tham testified that the car did not strike the plaintiff; whereas the foreman testified that the car did strike him. There was likewise a distinct discrepancy between the testimony of these witnesses as to the place where the accident occurred with reference to the plaintiff's boarding place, and also discrepancies in regard to other matters; and in contrast with the uncertainty of these witnesses with regard to many other matters which must have been equally within the field of their observation, the certainty and positiveness with which they all three testified that the plaintiff turned and jumped backwards from the car with both feet at the same time, is at least worthy of note. How, then, can it be said that the jury was bound to discredit the plaintiff's testimony and version of the accident, because there were discrepancies therein and because it was opposed by the testimony of the three witnesses above mentioned?

As to the negligence of Tham, the fellow workman whom the plaintiff claims jostled him and made him fall from the car, we do not think that it can be said that no negligence was shown. It requires little, if any discussion, to demonstrate that if there were either four or six men, including the plaintiff, on the front end of the moving car, standing sidewise and grasping the handle bar, on a space four feet four inches wide—packed together much like sardines in a box—if any of them turned around without warning another might easily be jostled thereby. Such an act, then, might constitute negligence outside of the risks assumed by the workman so jostled, if it should be held that he did assume any. Said Mr. Justice Brown, at page 328 of the Hider case, supra:

"The question of assumption of risk was for the jury. While it is clear that plaintiff assumed all risks incident to the overcrowded condition of the car, as he had worked under similar conditions for a considerable time, it cannot be held that he assumed the risk of negligent conduct of his fellow servants. The statute protects him from their negligence. Nor can it be held as a matter of law that plaintiff was guilty of contributory negligence by taking a position on the front end of the car with four other men. It was necessary that five men stand on one or the other end of the car, and whether plaintiff should have taken some other position was a question for the jury."

In answer to the defendant's contention that there was no suggestion that the movement of the plaintiff's fellow servant was made without warning or was unexpected, it is sufficient to say that it appears, as above stated, from the testimony of the defendant's own witnesses, that there was no talk whatever between the men preceding the accident. Let us, then, examine briefly the defendant's affirmative claim, detailing the circumstances of the accident. As stated, this is in effect that the plaintiff voluntarily released his hold, turned so that his back was towards the direction in which the car was going, and then jumped backwards from the car and upon the track in front of the moving car. The only reason suggested by the defendant for this extraordinary action on the plaintiff's part is that

this occurred while the car was slowly moving and was near the place where the plaintiff and some of his fellow workmen ordinarily alighted to go to their boarding place, a contention strikingly similar to that of the defendant in the Steffenson case, supra, and which, in that case was discredited by the jury. The court, in the instant case, instructed the jury substantially that, if they found such claim to be true, they would have to find for the defendant. Manifestly, therefore, in view of the verdict, the jury were not impressed with this contention, and neither are we.

The only witnesses who testified concerning the accident, in behalf of the defendant, were the section foreman, the man named Tham, whom the plaintiff claims pushed him off the car, and Wekne, a young man who had been in this country less than a month. As we have already stated, there are quite as many discrepancies in their accounts of the accident, to say the least, as can be found in the plaintiff's testimony; and we think that, upon the entire record, there is nothing inherently unreasonable in the plaintiff's theory of the case and nothing that necessarily discredits his account of the accident. Nor do we think that the defendant's theory is so much the more probable or supported by such an overwhelming weight of evidence, as to require us to say, or even to justify us in saying, that the jury was manifestly and palpably wrong in accepting the plaintiff's version of the accident. Curiously enough, while arguing the improbability of the plaintiff's version and the absence of negligence on the part of the defendant, the defendant charges, in effect, that the plaintiff did the identical thing which he claims that his fellow servant did, namely, released his hold on the handle bar and turned around without warning. Loosening the hand hold and turning around might have been done without thought or anticipation of the consequences, and yet might well be held by the jury to have been dangerous to the other men and likewise negligent, when the crowded condition of the men on the car is considered. But jumping backward from the car in the manner in which the defendant claims the plaintiff did, would be deliberate folly. That the plaintiff would deliberately jump backward immediately in front of the heavily loaded, though slowly moving, car, is unlikely, and, further, is at least more improbable than

that he was jostled from the car in the manner claimed by him. The jury, moreover, after hearing the evidence and the witnesses, and seeing the numerous physical demonstrations of the details of the accident which the record shows occurred at the trial, were in a much better position to determine the truth of the respective contentions of the parties than we are. We find no good reason for disturbing the verdict, after the trial court has refused to do so.

Order affirmed.